Good morning, Kristen Thaver for Appellant Edward Purry. I'd like to reserve three minutes for a colonel in charge of substance use. This is an ATF form violation case that the government tried as a gun trafficking case, but Purry was prevented from impeaching the government's evidence as to the actual form violations. This resulted in a fundamentally unfair trial. We request a remand for a new trial with only relevant evidence that goes to proving and disproving these form violations that are actually charged. First, turning to the pre-judicial propensity evidence the government was allowed to present, the jury heard evidence that Mr. Purry shipped firearms under a prejudicial pseudonym, which was a federal felony for each shipment. It also violated ATF regulations for shipping with a common carrier. It violated state law and conduct for which the postal inspector wanted to indict Mr. Purry. That was entirely improper evidence to present in a form violation case about false claims, false statements made on a form to buy firearms. Were any of these statements objected to in this trial? What did the district court do? Yes, Your Honor. The government, with the defense technologists, moved in limine to exclude evidence of shipment, any of the shipping evidence, and selling firearms. Were any of the testimonies referred to the House given in court, like the violation of postal inspectors wanted to indict him, anything like that, were there objections to those? Yes, Your Honor. Before the, most of that evidence came out during the final government witness, the case agent, when they played the clips of the interrogation, and before that was played, there was a sidebar, I forget if it was a sidebar or outside the presence of the jury, before that witness came on. And the defense reaffirmed that none of the shipment evidence should come in. And the district court reaffirmed... Well, it's consistent, I see none of this, but I thought that there's objections, but none of it should have come in at the specific objections that were played, because some of them seemed to me to be fairly push on others, perhaps not. So, were there specific objections to the specific witnesses that were played? There were objections to... It appears that the defense had some indication of the clips that were being played. That was the motion to examine the video that was filed before the trial began. And so that was most of the clips. But then the government stated that when the defense asked, can you tell us which clips you're going to play, the government said at page 587 of the record, you're just going to see that as it goes. So, there wasn't... The defense did the best they could to object. It was a four-hour interrogation, and the government chose certain portions, minutes, a couple minutes here, a couple minutes there, to play. And so the defense did the best they could to object and to preserve this issue by consistently saying that nothing about the shipment evidence should come in, and the evidence should focus on the elements of the false statements on an ETS form, charges that were at issue. So, let me get back to the statements that actually came in. Are you saying they might have come in, you know, sort of, but what was the government's answer when you came in? Did you say, well, you know, we didn't play that. It's just right next to the parts. It's a clear one. Well, right after the clip was played where the ETF agent, special agent, stated that the shipping conduct was a federal felony, there was sidebar, objection sidebar. And the defense talked about how this was what the minefield, quote-unquote, the government said it was trying to avoid by carefully selecting clips. And the government said that it sort of brushed it off on page 66 of the record that, okay, well, the shipping record said it's a felony, but people know that's a felony. It's not any more prejudicial than the shipping evidence itself, but it is because the jury, just like most juries, didn't know if these form offenses were even felonies, let alone whether any other conduct would be a felony as a judicial standard. Did you get a motion at that time or, like, you know, to strike it and to give up the covering instruction? There was a motion for a mistrial, which was denied, and that's at 66 through 69. That's most of the arraignment. And that was denied, and then the court did read a limiting instruction, the model instruction 3.10 at that point. But after that is when there was another clip played where the agent says, this also violates state law. And the judge just kept hitting it beyond that, and at every point after the clips were played, it was prejudicial. The government requested a sidebar, reserted its objection as a mistrial request. And that the government, the judge, forgave that grant to manage trial requests because this evidence was not probative. And the reason it's not 404B evidence, and the reason it does not survive 403 balancing tests or should not have, is because these guns that were intercepted by the postal inspector were not the guns charged in the indictment. They're guns of a different order. They're not any of the 14 guns. And the government admitted that at this point. At this instance, it was a motive evidence, right? Why is he doing this? Because he has enough knowledge that he needs to, and he's had more knowledge. But knowledge was false. The claim was false. And so the fact that he was abusing, that he had a reason to be doing it, which is that these guns, he was sending the guns to California because he couldn't be brought to California, is substandard, no? It's not, Your Honor, because they're not, this might be a different case if the guns that were shipped, the shipping evidence was tied to the actual guns he bought for transactions that issued in the indictment. But the government conceded that it couldn't prove that they weren't the guns. But the jury was left with the impression that it was these guns. That this was consistent, that he bought these guns and then shipped them off. And that's not actually what happened. The government didn't have that proof. And that's what really distinguishes this from a sort of either, it's definitely not in a particular way intertwined for that reason, but it also doesn't show motive as to these forms, why he would put a false statement on these forms to obtain guns, you know, to get around California state laws, because those weren't the guns that were shipped. And that's really the distinguishing factor. Because it's possible that you know how to represent yourself so that you can keep yourself accountable for that. So there's no footings on those shipping guns. Because on the guns charged in the indictment, he wasn't charged when he was trying to track the gun trafficking case. That's part of the problem. It's a consistent kind of case, and therefore that's why he did it in this particular case. Because it's just propensity evidence at that time. It's not tied to the charge of defense, so it can't show a motive for the charge of defense. Whether he bought guns from a different location, different place and shipped them, doesn't bear on what he did with these guns in the indictment. What did he acknowledge at the moment he wrote the form, the answers to the form? What about the prejudice or anything you'd have to destroy, given the fact that the forms definitely had a false address, which he admitted. There was plenty of evidence that he actually lived in Oakland. So what else matters? So the reason that these judicial convincing evidence that he submitted was not harmless, turns on the next, the second issue I raised, is that the restriction of impeachment of the government's evidence as to materiality, that fourth prong, the fourth element of the form of defense, is that the statement must have been material to the sale. The government's theory of proof on that fourth element turned on the big gun witnesses. At 406 and 407, the record shows it the best. The government stated during the trial, we have to prove materiality. We have to be able to ask this candidate as to whether these particular people would have actually sold him the guns, whether they only have sold him the guns, right? That's not what the government's theory was. The government's theory at trial actually relied on what these employees were. We're not after the other testified and three employees. And when the government responded to the Rule 29, most of the government stated that. And 101 to 102 stated, all these employees testified that if they knew it was a PO box and they knew he was not an Nevada resident, they would not have sold the guns if it's material, if the statements are material. On that subject, you received a concentrated material pertaining to your paperwork, but the candidate did not write that one. Was it before trial? Yes, I believe it was the Saturday before the Monday trial. All right. Now, what is your theory of what you could have done with that information if you had received it earlier? How much earlier? Two points on that, Your Honor. First, the district court should have allowed that violation as evidence for big guns practices to be used as impeachment material in this trial. So that should have been over. Basically, you mean that the big gun witnesses were justified? Yes, Your Honor, the owner and the three witnesses. And at the very least, the owner who justified as to when they would or would not be allowed to sell the guns. Oh, you didn't sell it to the users? It was not allowed. It was shut down at page 49 to 51 of the record when the defense started to question about mistakes on forms. Well, that's not a Brady rule. That's a different rule. It is, Your Honor. And it arose from this late violations evidence. The disclosure and the part of the petition. Originally, it was from the same disclosure. You had the material, and I don't think you should have allowed it. I can't see why you shouldn't have allowed it. But I don't know. You simply raised that question, did you? It was raised with the Brady issue, and perhaps I do realize that when I was preparing Well, as I understand it, your Brady claim is that we received the material too late to do us any good. But as Judge Berzon just indicated, you were able to use it to impeach the victim. But this is the time you had the time to do that. You just have the judge rule against you. So that has nothing to do with the fact that you received the Brady material, right? It doesn't have these steps. Right. Well, anyway, let me go back to my question. So what was the prejudice? In other words, what could you have done or would you have done if you'd received that Brady material? We clearly didn't receive it. Well, specifically for the impeachment evidence, the defense could have explored whether the other employees, who testified, were involved in any of those transactions. They could have received a letter on it. That was evidence we did not have. Who did testify involved? You mean the deterrent employee's name on the form? The ATO form violation evidence that we received, the defense received when it was filed in the record, does not say what employees were involved in what transactions. It's not the actual forms. It's an ATO form. Oh, no, no, no. You get the individual forms like the one your client was convicted of making a mistake, in that each form is signed by the seller, right, with an ATF licensee or an ATO licensee, right? That's not what the evidence was. That's not what the form violation, the big-time form violation evidence. It wasn't that. It was an ATF. It wasn't the individual forms. It was those other violations that the client received a letter for. And it didn't say what employee was involved in. The judge said that it was a sideshow, that it was a sideshow. Essentially, in a 403, it's confusing. It's not material. It's not relevant to the form defenses. And I understand that that's also a problem. Right. But, as you've gotten it earlier, it was total rules. It's not. Right, Your Honor, and so I think there are two problems with the Brady evidence. And I do wish I would have put a separate heading for this separate issue. It is the most concrete problem with the Brady evidence. It's an impeachment, really, out of court. It's a constitutional right to impeach the government. So that's how you eliminate the Brady problem? Because essentially, what you allowed it in, no matter when you got it, was different. Because that was erroneous. Because the government's theory on materials. Not really erroneous, but it's not a Brady problem. It's an impeachment problem. It was a restriction. And it was in public, so the government did not sign, but that was impeachment material. Anything else? You could have raised the argument if you had this Brady material earlier, you could have raised the argument if you had this idea of using more information about people. Do you? To explore if these employees have misinformed people on how to fill out the forms. The misinformed, there were so many violations, that we should have been able to explore how those violations in these other cases at the exact time that Mr. Perry was buying guns, how those came about. Were these employees not trained properly? Were they misinforming? What issue does that tend to prove? How bad the big guns were looking? How sloppy the employees were. Even if they do apparently lie on the forms. What issue does that go to? It would go to whether it's a material misstatement, whether it was knowingly false because of the employees that you couldn't put at the inbox. Well, what's your definition of material? On the form that you're here to apply, is it making a material misstatement? What's your definition of material misstatement? The attorney was instructed that a false statement is material if it had a natural tendency to influence or was capable of influencing big gun enterprises into believing that firearms could be lawfully sold to the defendant. Also, the jury was instructed, and that's the model instruction. Do you agree with that instruction? I mean, if you're not challenging it. There's no objection to that. All right, so you're saying if you could have shown that the big gun employees didn't pay any attention to the information on the form because they didn't pay attention to the information on the form, it wouldn't have made any difference to the big guns, so therefore it was not material? And that's exactly what we should have been able to do, to explore that alternative, but especially and directly impeach this trial the way the evidence would tell. Because the government relied on that to sue, let's pick on the employees in closing at 684 to 687 to say, we've proven materiality. All these employees did this right, they would never have sold those guns if they knew it was a post office and not an embezzler. I apologize, Your Honor. Thank you so much. Good morning. My name is Jason McCord. Adam Flake for the United States. With respect to the first issue, and that is the specificity of the objection to the 404B evidence, I just want to be really clear about what I am arguing, which is I'm not saying that they didn't object to the shipping evidence. They did object to the shipping evidence in general. What they did not do was object to the specific portion of the video where the agent said the shipping evidence is. It was on the tape, Your Honor, and I simply disagree with the defense about whether or not they had an opportunity to. Throughout the trial, we said, okay, we are about to play for some, you know, I'm making this up, but, you know, we're about to play from video 101, you know, minute 101 to 103, and there were points where they did object to that before we played the video. You can find one of those at ER 72, and you can find that. You said this in time, and you could have gotten to it and not have to object to it. They were aware of what was on the video. They did not object. They weren't necessarily aware of what was on, you know, non-presentation session and presentation session. Your Honor, I can't necessarily speak to what they were aware of, but I can say that at some points we did say we are about to play this portion of the video, and they said we object because they're about to hear something, and so there were points at that. There's one of those at ER 72, and there's another one. There is standing objections to the next two clips that we're about to play at ER 87. So this notion that they just had no idea what was coming, I don't think is accurate. So to me, this is another one of the unusual set of cases in which the prosecutor goes at it, but it doesn't need to go at it, because the evidence is perfectly clear. And then, again, I mean, why or what is the justification and what was the need for playing a tape that specifically referred to the things they were doing as crimes that were not charged? Why isn't that a question? There's a problem, and what was the point of it? Your Honor, as the appellate attorney in sending this case, I just might. But it's the answer we always get, and it's really maddening. Your Honor, the evidence was relevant. It was thoroughly litigated. It was relevant to proving our case. It was relevant. I understand what was said. The shooting evidence in general was relevant. But why it was specifically relevant in any way and not a 404 be a violation, or maybe not a 404 be a violation of this 403 problem, and what they were doing was specifically suspecting to be independent crimes and the culture service wanted to prosecute them and so on, I can imagine. Your Honor, I think that's the point of why I started out saying about this specific objection, which is if they had raised this specific objection and said, fine, we thoroughly litigated the shipping evidence, we understand that it's coming in, but please keep this separately out, this mention by the postal inspector, at that point, we may well have said, we agree, the court may have said, we disagree, and the court may have said, I agree with the defense not keeping this specific evidence out because it is too prejudicial, but they did not do that. They attached it to the shipping evidence generally, and then once we had put in this evidence, then that's it. And on the appeal, they say, well, the fact that it was a crime is somehow categorically different than the shipping evidence generally, therefore we move for mistrial. Well, they moved for mistrial because the district court gave a limiting instruction. Out of an abundance of caution, even though I didn't find that it was erroneous to put it in, the district court did give a limiting instruction. And that was just how it came in. If it had been litigated differently, the evidence possibly wouldn't have come in, but the district court held that the shipping evidence was relevant, and we agreed with the shipping evidence, and we'll go forward with the limiting instruction. The limiting instruction said something along the lines of, he's only on trial for the crimes that are charged in the indictment, and, you know, the fact that his crimes, you know, the fact that he might have constituted a separate crime argument is not relevant. Something along those lines. You're not contending that the statement that the postal directors want one indictment for a federal postal offense is wrong, are you? I don't think that the fact that they wanted to indict him necessarily is especially relevant in any way, but it was part of the shipping evidence. It was the two interrogators talking to Curry about the fact that he was doing shipping, and we were allowed to have that evidence. But the shipping evidence in Germany was the most irrelevant and perjudicial. I'm not saying that it's irrelevant. It's irrelevant, too, but that's true. You know what I'm asking? It was part of the shipping evidence that the postal directors wanted. I don't know what they were going to end up with, an inspector's warrant indictment. You know, that particular part, it was part of the tape where he was talking about it. So my question is, why is it relevant? It's not especially relevant, other than the fact that it's true. It's generally relevant, and it's perjudicial, isn't it? You know, it's perjudicial. The fact that it was a crime, I concede it doesn't have any relevance other than the shipping evidence. It's generally irrelevant. And, again, it's definitely been an objection to it. I mean, if the fact that it was a crime and killed 40 to the absence codes, it might have been relevant. But the question of whether the shipping was a crime is really not relevant. I agree, Your Honor. And once again, if there had been a specific objection on that basis, that, hey, the shipping evidence is okay, let that occur. You know, the court's rule is okay. The fact that it's a crime is not okay. Keep that part of it out. The court could have ruled on it. If they didn't make that objection, is there a keeping thing on a limiting instruction? I don't know how they manage to object to what they did object to, but it does seem very difficult. If somebody, you have an MCG, and you say, I'm going to play a person, you know, but it's so-and-so to so-and-so, and they're supposed to know in their head what's in there. It just seems impossible. If there was a comment that you don't know in your ear it actually made? Your Honor, I mean, it's in the record. It's like we've had to read it to the court. Well, then, what were they supposed to do? Your Honor, they did know ahead of time what steps we were going to play. They litigated over it. They filed it. They knew what specific steps we were going to play. That's why you said they didn't know. They knew when you just interrupted and said, I'm going to play these steps now. Your Honor, they had a list of several of the clips. They had a list of the clips that they were going to play, and they filed a motion limiting about them before trial. And I don't want to get myself into trouble. I don't want to speak for what the defense had in front of them and how they had their information organized. After you said it, I thought you said that until you stood up and said, I'm going to play these particular minutes, they didn't know they were going to play those particular minutes. Again, Your Honor, I don't want to get myself in trouble. It speaks for what they had in their mind. Were they told? Yes. They were told that you were going to play these minutes? I don't think that they were told during the minute of trial, but we gave them a list of the portions of the video that we were going to play, and they raised specific objections to some of the portions of the video that we were going to play. That's AR 1760, 179. I don't think that we were surprising them by the portions of the video. I don't think the record supports that, but again, I apologize for confusing you, Your Honor. I hate to over-make this point, but if the defense felt like we were surprising them, if they felt like they didn't have an adequate opportunity, the government does not get to dictate to the defense what they can object to and what they cannot object to, and if they had wanted more time and if they had wanted to look at each minute, they certainly could have asked the court to do so, and it would have been, you know, if the government doesn't get to decide, things like that. You know, going back to the question of materiality, in response to one of my questions, the defense counsel read that very first, you know, materiality, and it seems to support their position that evidence, the evidence that the employees had begun basically disregarding identification or entries or even blanks or, you know, false entries on these forms is irrelevant to prove my materiality, because wherever it's on the form, I guess, as there is wherever it's on the form, does it make any difference to the questions you can ask? Is that the materiality definition? No, Your Honor, the materiality is, and I can find the jury in substance, but it's whether it has a natural tendency to influence. Oh, I can see. It's a EGF licensee. Yes. And it has to do with whether or not the sale is lawful. And so if somebody is making. Well, that would put the point of the evidence as if the licensee continually disregards information on the forms,  That's their argument, Your Honor, but I disagree with that because whether or not the EGF, the FFL disregards it doesn't have any bearing on whether or not the sale is lawful. But that's what the EGF instruction says. No, Your Honor. If I could just read it. So this is an EGF 663 in the jury instruction. The first time it was born. 663. Okay, got it. The first time it was material, that is, the first time it had a natural tendency to influence or was capable of influencing background, up to believing that the firearm could be lawfully sold to the defendant. And I think that's a very different question than whether the non-careful or deceitful or whatever you want to describe the particular FFL, whether they would have done it is a different question than whether Mr. Curry misled them into believing that they could lawfully do it. Well, that's quite an obvious case because I never paid attention to it. It doesn't have the capability of influencing the EGF licensee. It doesn't naturally. That's the theory of their case. I guess so, Your Honor. But I think that it's incorrect because I think that the question is whether this would naturally influence an FFL to believe that they could lawfully do it. That's what Bradford instruction here that Bradford says we're capable of. And with this licensee, it's not capable of doing that. I mean, that's the theory. It's capable of influencing them into believing that the firearm could lawfully be sold. Right. Right. I mean, the whole point, I think, of the defense is, you know, materiality of, let's say, defense, this impeachment evidence is that it's not capable of influencing this licensee because they never paid attention to the information. They didn't care what information was on the firearm. But, Your Honor, the question is whether it could influence them into believing that they could do it lawfully. And whatever was on it could influence it to do it lawfully. Whatever was on the firearm could influence this licensee to do it lawfully. Your Honor, I don't think that. I think the question is whether the representations that he made would lead them into thinking it was lawful. And regardless of whether, you know, the person was asleep at the switch or whether the person was, you know, not doing their job in any way. Is the Supreme Court of Braski case relevant to this? I thought that it essentially adopted something like the position you're taking. That is, the question was, what was lawfully the case rather than what's specifically the case. And the answer is, I think that's the case. That's correct, Your Honor. And I understand that's what you're saying. Yes. And that'll be good if everyone is listening. Thank you. Thank you. Could you strongly carry on with your case inquiry? Yes, Your Honor. I look back at the motion to examine the court video. It does state that the government gave an hour and 20 minutes of clips that I think you need to play. And so the defense did make objections, and the defense did object to 1519 to 1530, which contained the shipping evidence, the felony evidence, sorry, the shipping was a felony. It's not stated in that motion. So it's not in the motion or the basis. But right before the government admitted to evidence, the government did say at 587, you're just going to see that as it goes when the defense had to keep those clips in because they had been whittled down the government. The court excluded some of the evidence. Well, as soon as you tell us, right, did yourself come to the objection? Yes. Did you object yourself to the whole of the subject? Right, to the most part. Yes. We didn't know those clips because they had been changed after the Lemony-Rollingston trial. But the government also said they were narrowed, yes, somewhat. But the government did say right after that, I can tell you there's no discussion of selling firearms, which was true. There's no discussion of any additional criminal conduct, and that's not true because the country didn't know that shipping was a felony until the agent said shipping itself could not necessarily be a crime. So the government misled, I believe misled the district court and the defense into believing that there would be no discussion of criminal conduct, just of shipping conduct. And I would like to briefly touch on the immateriality issue. The government's theory was that in closing at 687, that each of them, the Big Gun employees, each of them known that the address was a P.O. Box or a mailbox, that sale could not and would not have gone through. And if each one of those individuals had known the defendant did not reside in Nevada, that sale could not and would not have come through. So the government chose to make its materiality argument turn on the Big Gun employees, not on Everett and Skinny. If you didn't hear in your brief, the argument is that Mr. Garner's judge is exclusive of the impeachment as opposed to the brief. Mr. Honor, it is referenced in the opening brief, but in the brief section, which is at page 16, the sentence says, the district compounded the constitutional error by refusing to allow Curry to question Allen about violations at 16, or present any valid violations evidence to the jury. And then in the reply, 363, again, resorted at the very least, Curry should have been able to, at page 11, at the very least, the district court should have permitted Curry to query the Big Gun employees about these violations, at the very least, that should have occurred. So I apologize for not putting that in a separate heading and raising it as an issue in that respect, but we did argue that. And it is an important trial error that, compared with the shipping and the felony evidence, the trial requires remit for a new trial with less proven judicial evidence. Thank you. Thank you.
judges: Reinhardt, Tashima, Berzon